IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


LESLIE O. BLACKBURN                                           PLAINTIFF


        v.                       Civil No.  15-5049


NURSE RHONDA BRADLEY; NURSE
KRISTEN JONES; NURSE LEE ANN (last
name unknown); and OFFICER
PRESTON BAKER                                                DEFENDANTS


## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  The

Plaintiff, Leslie O. Blackburn, proceeds *pro se* and *in forma pauperis*.  He names as defendants

Nurse Rhonda Bradley, Nurse Lee Ann Lambert, Officer Preston Baker, and Nurse Kristen

Jones. From the pleadings, it appears that the Plaintiff is suing Nurse Lee Ann Lambert and

Nurse Kristen Jones in their official capacity only.  It appears that Plaintiff is suing Nurse

Rhonda Bradley and Officer Preston Baker in both their official and personal capacities.

Blackburn is incarcerated in the East Arkansas Regional Unit of the Arkansas Department

of Correction.  Blackburn's claims in this action concern his confinement at the Washington

County Detention Center (WCDC).  Blackburn asserts that his constitutional rights were violated

while he was incarcerated in the WCDC because the defendants were deliberately indifferent to

his serious medical needs in violation of the Eighth Amendment of the United States

Constitution.

-1-

AO72A
(Rev. 8/82)

A hearing was held on October 8, 2015, to allow Blackburn to respond to the Defendants' motions for summary judgment (Doc. 45 and 48).  The motions are now ready for decision.

**Background**

Blackburn was booked into the WCDC on September 4, 2014.  (Doc. 47, Ex. A-1).  On January 15, 2015, Plaintiff appeared in Court and pled guilty.  (Doc. 47, Ex. A-1).

During his stay at WCDC Blackburn's was offered certain medications prescribed to him prior to his incarceration at WCDC.  (Doc. 47, Ex. A-1).  At times Blackburn refused those medications.  (Doc. 47, Ex. A-1).

Blackburn's first medical treatment at WCDC was for an ear infection in December of 2014.  (Doc. 47, Ex. C).  Blackburn first complained of ear pain on the inmate kiosk on December 5, 2014, stating:  "My ear is swollen on the inside and it hurts like crazy its starting to make a popping sound please help asap thank you."  (Doc. 47, Ex. A-1, p. 99).  Nurse Rhonda Bradley responded to that complaint on December 8, 2014 at 12:10 p.m.:  "added to nurse call." (Doc. 47, Ex. A-1, p. 99).

On December 6, 2014, at 6:36 a.m., Blackburn wrote, "I've put in a request to medical letting them know my ear is swollen on the inside I can't hear out of it its running puss or something and it hurts so bad.  My ear needs immediate attention please.  Thank you." (Doc. 47, Ex. A-1, p. 99).  At 6:37 p.m., J. Byrd wrote, "Request given to the nurse."  (Doc. 47, Ex. A-1, p. 99).

Blackburn again complained on December 6, 2014 at 10:32 a.m., "I need medical attention for my ear ASAP.  This is the second request please its draining, its hurts, and I can't hardly hear out of it.  I've talked to the floor nurse she said put in a request.  Once again, second

-2-

one." (Doc. 47, Ex. A-1, p 99).  Nurse Rhonda Bradley responded to that complaint on December 8, 2014 at 12:26 p.m., "on nurse call." (Doc. 47, Ex. A-1, p. 99).

According to the Jail File, on December 6, 2014, Blackburn began receiving medical care for the ear pain that began on December 5, 2014.  He was treated with Tylenol for 7-10 days and amoxil for 10 days. (Doc. 47, Ex. A-1, p. 84).

On December 8, 2014, Blackburn was seen by the nurse for his ear: "L ear swollen shut, swelling around outer ear.  No drainage but I/M states was draining last week.  ABX: tylenol started." (Doc. 47, Ex. A-1, p. 50).

On December 11, 2014, Blackburn wrote, "yes they have been giving me my medicine but my hearing and the pain has become worse, draining on the inside and nothing is draining out.  My ear need attended to immediately, I'm losing my hearing more each day."  The following day, Nurse Rhonda Bradley responded, "Added to nurse call." (Doc. 47, Ex. A-1, p. 99).

On December 12, 2014, Blackburn refused medication. (Doc. 47, Ex. A-1, p. 51).  On December 13, 2014, Blackburn refused sick call. (Doc. 47, Ex. A-1, p. 55).

On December 14, 2014, Blackburn complained that his ear seemed to be getting worse, that it was still draining and that his hearing was becoming worse.  He believed the swelling had increased on the inside and the pain was overwhelming.  On December 15, 2014, Nurse Bradley wrote, "added to nurse call."  That day she examined Blackburn and noted his ear was still draining and he was currently on ABT.  Blackburn was placed on the MD list. (Doc. 47, Ex. A-1, p. 52, 100).

AO72A
(Rev. 8/82)

On December 15, 2014 at 8:10 a.m., Blackburn complained "I have put in request after request about my ear draining and I can hardly hear at all the swelling is still there I would like a 1983 form  thank you."  M. Freeman responded on December 15, 2014 at 8:44 a.m., "I will forward this to medical.  You will need to write to the address below and explain in detail why you would like a 1983 form. . . ."  (Doc. 47, Ex. A-1, p. 100).

On December 19, 2014, the Blackburn was seen by a doctor concerning his left ear pain. Blackburn was prescribed cortisporin Otic and Aleve.  (Doc. 47, Ex. A-1, p. 54, 84).  Blackburn testified that after about a week or two, the ear drops resolved his ear issue.

On December 31, 2014 at 7:46 p.m., Blackburn complained of a "big sore knot under my arm it needs attention immediately please thank you." (Doc. 47, Ex. A-1, p. 100).  Nurse Rhonda Bradley responded on January 2, 2015 at 3:38 p.m., "added to nurse call."  (Doc. 47, Ex. A-1, p. 100).  Blackburn testified that he showed the knot under his arm to Nurse Kristen Jones on December 31, 2014.  Blackburn testified that at the time Nurse Jones saw the knot, it had not burst.

Blackburn again complained on January 2, 2015 at 2:37 p.m., "I've put in a request about a knot under my arm two days ago and no one has answered it needs attention immediately please." Nurse Bradley responded to this request on January 2, 2015 at 5:03 p.m. with "on nurse call."  (Doc. 47, Ex. A-1, p. 101).

Blackburn testified that he showed the knot to Nurse Rhonda Bradley during nurse call on about January 5, 2015.  Nurse Bradley stated that she would put Blackburn on antibiotics but that he never got the antibiotics for the knot.  Blackburn also testified that while he was showing Nurse Bradley, a corporeal looked at it too, and stated that he had one similar that hurt but then

-4-

went away.  Blackburn testified that at the time Nurse Bradley examined the knots they were not draining, just big, half-dollar sized knots.

Nurse Bradley's notes from January 5, 2015 state "no sign of infection at this time." (Doc. 41, Ex. A-1, p. 56).

Blackburn also testified that he showed the knots to Nurse Lee Ann Lambert in the hall and "she just put me on nurse call."  At that time, the knots were swollen and discolored, but not draining.

On January 7, 2015 at 4:59 p.m., Blackburn wrote "I was supposed to receive some antibiotics and never got them, for a knot under my arm."  On January 8, 2015 at 7:59 a.m., Nurse Bradley answered: "added to nurse call."  (Doc. 47, Ex. A-1, p. 101).

On January 29, 2015 at 10:53 a.m., Blackburn wrote: "Yes, I have a knot under my right arm and it hurts, flaming red needs attention immediately, please help."  Again, on January 30, 2015 at 10:09 p.m., Blackburn complained "I've put in a request two days ago about a knot under my arm and no one has answered it yet I believe this is negligence of medical service.  I will contact my lawyer in this matter.  I want the record to show that I have filed a formal complaint." On February 2, 2015, Nurse Bradley responded to both complaints: "added to nurse call."  Nurse Bradley again noted on February 5, 2015 at 3:21 p.m., "refused."  (Doc. 47, Ex. A-1, p. 101, 102).

Blackburn testified that on January 31, 2014, he showed the knots to Officer Preston Baker, and, at the time, the knots had burst.  Officer Baker just instructed Blackburn to report it on the kiosk.  Blackburn testified that he asked Officer Baker to come and look at the kiosk to see how many times he had complained.  Blackburn testified that Baker did not come to the

-5-

kiosk, but just told Blackburn to make another entry.  Blackburn did not make another entry at that time because he thought Officer Baker would call someone since the knot was "leaking blood and pus."

According to Officer Preston Baker's affidavit, he was in the process of passing out cleaning supplies when Blackburn showed him the knot.  Baker testified that he did *not* see blood or any other discharge from the knot.  Baker stated that if he had seen blood or other discharge he would have provided supplies to Blackburn to control the wound and would have then contacted medical personnel.  (Doc. 47, Ex. B).

Blackburn testified that after his January 29 complaint, another inmate "took the core out" of the knots, which helped them.  Therefore, Blackburn testified, on February 5, 2015, he had no pain and the swelling was down.  Blackburn testified that over the period of time approximately 6-8 knots developed, and that another inmate helped him excise 2-3 knots.  The inmate also washed the area with antibacterial soap.

### Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." Id. (citing, Metge v. Bachler, 762 F.2d 621, 625 (8th Cir. 1985)).

**Discussion**

As stated above, Blackburn claims that his constitutional rights were violated because the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment of the United States Constitution.  "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." County of Sacramento v. Lewis, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted).  In Butler v. Fletcher, 465 F.3d 340, 344 (8th Cir. 2006), the Eighth Circuit held that deliberate indifference is the "appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care and reasonable safety."

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle  v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials

-7-

actually knew of but deliberately disregarded those needs.'" Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000)(quoting Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" Jolly, 205 F.3d at 1096 (quoting Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995)). See also Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Schaub v. VonWald, 638 F.3d 905, 914 (8th Cir. 2011)(citing Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)).

### Official Capacity Claims

Initially, the Court notes that Blackburn's official capacity claims are tantamount to suing Washington County. "Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by 'a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" Grayson v. Ross, 454 F.3d 802, 810-11 (8th Cir. 2006)(citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). There are no facts to support an allegation of an unconstitutional policy

-8-

or custom; therefore, Blackburn's official capacity claims should be dismissed. Further, because Blackburn has asserted only official capacity claims against Nurse Lee Ann Lambert and Nurse Kristen Jones, all claims against Lambert and Jones should be dismissed.

### Officer Preston Baker

Blackburn's personal capacity claims against Officer Preston Baker solely stem from Blackburn's interaction with Officer Baker on January 31, 2015. On that date, Officer Baker was passing out cleaning supplies at the WCDC. Blackburn showed Officer Baker the knot under his arm. Officer Baker advised Blackburn to make a medical request on the kiosk. Although Blackburn states that the knot was draining at the time, Officer Baker has testified that he did not see blood or other discharge coming from the knot. Officer Baker claims that he is entitled to summary judgment because Blackburn did not exhaust his administrative remedies and because Officer Baker was not deliberately indifferent to Blackburn's medical needs.

According to 42 U.S.C. 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Further, "exhaustion is required where administrative remedies are available even if the available administrative remedies do not provide the precise, or full, relief sought." Walker v. Maschner, 270 F.3d 573, 577 (8th Cir. 2001)(citing Booth v. Churner, 532 U.S. 731, 738-39 (2001)). It is clear that Blackburn did not file a grievance with respect to Officer Baker's alleged deliberate indifference to his medical needs prior to filing this lawsuit. Blackburn's claims against Officer Baker are therefore subject to dismissal.

-9-

Further, the undisputed facts, taken in the light most favorable to the Plaintiff, simply do not support a finding that Officer Baker was deliberately indifferent to Blackburn's serious medical needs.  It is undisputed that Blackburn showed Officer Baker the knots under his arm on January 31, 2015.  Although Blackburn testifies that the knots were draining at the time, it is undisputed that Officer Baker instructed Blackburn to enter a medical request on the kiosk as was protocol at the WCDC.  Blackburn argues that Officer Baker should have contacted the nurse himself or should have taken him to the nurse's station; however, the Court finds that the actions taken by Officer Baker – instructing Blackburn to enter a medical request on the kiosk – do not rise to the level of deliberate indifference.

### Nurse Rhonda Bradley

Blackburn's personal capacity claims against Nurse Rhonda Bradley include Nurse Bradley's treatment of his ear ache[1] and Nurse Bradley's treatment of the knots under his arm.

Blackburn first complained of ear pain on December 5, 2014.  Blackburn was seen by Nurse Bradley on December 8, 2014.  On that date, Nurse Bradley noted "L ear swollen shut, swelling around outer ear.  No drainage but I/M states was draining last week.  ABX: tylenol started."  The Jail File also notes that Blackburn began receiving amoxil and Tylenol on December 6, 2014.  Blackburn's ear complaint continued on December 11; but, the Jail File indicates that Blackburn refused medication on December 12, 2014.  Following another complaint by Blackburn on December 14, 2014, Nurse Bradley examined Blackburn's ear on December 15, 2014, and then placed him on the list to see a doctor.  Blackburn was seen by a

---

[1]During the hearing, the attorney for Nurse Bradley contended that Blackburn's claims concerning the treatment of his ear ache were not included in his complaint.  However, Blackburn does mention the treatment of his ear on page 12 of his Complaint (Doc. 1).  Because a pro se complaint should be liberally construed, the claim will be considered.  Estelle v. Gamble, 429 U.S. 97, 99 (1976).

AO72A
(Rev. 8/82)

doctor on December 19, 2014 and was prescribed Otic ear drops and Aleve. The ear drops eventually resolved his ear issues. I find these undisputed facts support the finding that reasonable medical treatment was provided by Nurse Bradley with respect to his ear.

Blackburn first complained about a knot under his arm on January 2, 2015. Nurse Bradley responded to his complaint on that date and put Blackburn "on nurse call." Blackburn testified he showed the knot to Nurse Bradley on January 5, 2015. Although Blackburn testified that he understood that antibiotics were going to be started at that time, Nurse Bradley's nurses notes state "no sign of infection at this time."

Nurse Bradley again added Blackburn to "nurse's call" on January 8, 2015 after Blackburn's January 4, 2015 kiosk request. Blackburn did not complain of the knots under his arm again until kiosk requests on January 29, 2015 and January 30, 2015. Nurse Bradley responded to both requests with "added to nurse call." Nurse Bradley then noted on February 5, 2015 that Blackburn "refused" treatment. Blackburn testified that the issues with his knots had resolved at that time.

The undisputed facts again show appropriate medical care. On the one occasion Nurse Bradley examined Blackburn she determined that no infection was present. This diagnosis and course of treatment seems reasonable, especially where there is no allegation that Nurse Bradley ever saw the knots draining. The Court therefore recommends that all claims against Nurse Bradley be dismissed.

### Conclusion

For the reasons above, I recommend that  Defendants' motions for summary judgment (Doc. 45 and 48) be **GRANTED** and this case dismissed with prejudice.

-11-

The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 9th day of November, 2015.


/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

-12-